No. 25-252

# In The United States Court of Appeals for the Ninth Circuit

---

BERNARD WAITHAKA,
on behalf of himself and all others similarly situated,

*Plaintiff-Petitioner,*

v.

AMAZON.COM, INC. and AMAZON LOGISTICS, INC.,

*Defendants-Respondents.*

---

Appeal from the United States District Court
for the Western District of Washington
Case No. 2:19-cv-01320-JCC
Hon. John C. Coughenour

---

## ANSWER TO PETITION FOR PERMISSION TO APPEAL FROM ORDER GRANTING CLASS CERTIFICATION

Jason C. Schwartz
Lucas C. Townsend
Gibson, Dunn & Crutcher LLP
1700 M. Street, N.W.
Washington, DC 20036-4504
Tel: (202) 955.8500

Dhananjay S. Manthripragada
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel: (213) 229.7000

Megan Cooney
Gibson, Dunn & Crutcher LLP
3161 Michelson Drive, Ste. 1200
Irvine, CA 92612-4412
Tel: (949) 451.3800

*Counsel for Defendants-Respondents
Amazon.com, Inc. and Amazon Logistics, Inc.*

## CORPORATE DISCLOSURE STATEMENT

Amazon.com, Inc. has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

Amazon Logistics, Inc. is a wholly owned subsidiary of Amazon.com, Inc.

The two companies are referred to collectively herein as "Amazon."


Date: January 24, 2025

*s/ Jason C. Schwartz*

# TABLE OF CONTENTS

**Page**

Corporate Disclosure Statement................................................................i

Introduction ...............................................................................................1

Factual Background ...................................................................................2

    A.    The Amazon Flex Program .....................................................2

    B.    Plaintiff Bernard Waithaka.....................................................4

    C.    Waithaka's lawsuit and certification motion ..........................4

    D.    Amazon's opposition and expert report..................................5

    E.    The district court's request for supplemental briefing..........6

    F.    The district court's denial of class certification ....................6

Standard of Review ...................................................................................8

Reasons the Petition Should be Denied....................................................9

I.    No manifest error in denying certification on minimum
    wage-claim. .....................................................................................9

    A.    Waithaka failed to satisfy the requirements for
          certification...........................................................................9

    B.    Waithaka's counterarguments are meritless.......................11

II.    No manifest error in denying certification of Wage Act claim......14

    A.    Even assuming a viable Wage Act claim, Waithaka
          failed to meet the requirements for class certification........14

    B.    Waithaka's attempt to use 23(f) review to belatedly
          request SJC certification is improper. ..................................17

    C.    The district court correctly interpreted the Wage Act. ........18

III.    Waithaka's death-knell argument is meritless..............................20

Conclusion................................................................................................20

## TABLE OF CONTENTS (CONTINUED)

**Page**

Certificate of Related Cases .................................................................... 22

Certificate of Compliance ...................................................................... 23

Statutory Addendum ............................................................................... 24

Certificate of Service .............................................................................. 29

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Awuah v. Coverall N. Am., Inc.*,
  460 Mass. 484 (2011) .................................................................. 19

*Awuah v. Coverall N. Am., Inc.*,
  740 F. Supp. 2d 240 (D. Mass. 2010) .................................... 19

*Awuah v. Coverall N. Am., Inc.*,
  2012 WL 910260 (D. Mass. Mar. 15, 2012) ........................... 19

*Boshears v. PeopleConnect, Inc.*,
  76 F.4th 858 (9th Cir. 2023) ..................................................... 14

*Bowerman v. Field Asset Servs., Inc.*,
  60 F.4th 459 (9th Cir. 2023) ......................................... 8, 11, 12

*Camara v. Att'y Gen.*,
  458 Mass. 756 (2011) ................................................................. 19

*Castillo v. Bank of Am., NA*,
  980 F.3d 723 (9th Cir. 2020) .................................................... 12

*Chamberlan v. Ford Motor Co.*,
  402 F.3d 952 (9th Cir. 2005) .......................................... 8, 9, 20

*DZ Rsrv. v. Meta Platforms, Inc.*,
  96 F.4th 1223 (9th Cir. 2024) ................................................... 12

*Grogan v. All My Sons Bus. Dev. LLC*,
  552 F. Supp. 3d 142 (D. Mass. 2021) ..................................... 19

*Hinojos v. Kohl's Corp.*,
  718 F.3d 1098 (9th Cir. 2013) .................................................. 17

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
  31 F.4th 651 (9th Cir. 2022) ..................................................... 13

### TABLE OF AUTHORITIES (CONTINUED)

Page(s)

*Owner Operator Indep. Drivers Ass'n, Inc. v. Swift Transp. Co.*,
367 F.3d 1108 (9th Cir. 2004) .............................................................. 13

*Parker v. Battle Creek Pizza, Inc.*,
95 F.4th 1009 (6th Cir. 2024) ............................................................. 16

*Perry v. Brown*,
667 F.3d 1078 (9th Cir. 2012) ............................................................ 14

*Prozinski v. Ne. Real Est. Servs., LLC*,
59 Mass. App. Ct. 599 (2003) ............................................................. 18

*Salerno v. Baystate Ford, Inc.*,
2016 WL 513747 (Mass. Super. Feb. 5, 2016) .................................... 19

*Seismic Reservoir 2020, Inc. v. Paulsson*,
785 F.3d 330 (9th Cir. 2015) ............................................................... 20

*Thompson v. Paul*,
547 F.3d 1055 (9th Cir. 2008) ............................................................ 18

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016) ............................................................................ 13

*Tze-Kit Mui v. Mass. Port Auth.*,
478 Mass. 710 (2018) .......................................................................... 18

*United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*,
602 F.3d 1087 (9th Cir. 2010) ............................................................ 20

*Van v. LLR, Inc.*,
562 F. Supp. 3d 1 (D. Alaska 2021) .................................................... 18

*Vargas v. FMI, Inc.*,
233 Cal. App. 4th 638 (2015) ............................................................. 13

TABLE OF AUTHORITIES (CONTINUED)

**Page(s)**

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ........................................................................ 7, 16

**STATUTES**

28 U.S.C. § 1332(d) ........................................................................ 20

820 Ill. Comp. Stat. 115/9.5 ....................................................... 16

Cal. Lab. Code § 2802 .................................................................. 16

Mass. Gen. Laws ch. 149, § 148 ................................................ 18

Mass. Gen. Laws ch. 151, § 1 ..................................................... 11

Okla. Stat. tit. 40, § 197.17 ........................................................ 16

S.D. Codified Laws § 60-2-1 ....................................................... 16

**RULES**

Code Ark. R. 003.20.2-3 ............................................................... 16

Fed. R. Civ. P. 23 .................................................................... 13, 20

Fed. R. Civ. P. 23(f) ........................................................... *passim*

**REGULATIONS**

49 C.F.R. § 376.11 ......................................................................... 13

49 C.F.R. § 376.12 ......................................................................... 13

49 C.F.R. § 376.12(c)(4) ............................................................... 13

**OTHER AUTHORITIES**

2014 Mass. Legis. Serv. ch. 144 (S.B. 2195) ........................... 11

2018 Mass. Legis. Serv. ch. 121 (H.B. 4640) .......................... 11

TABLE OF AUTHORITIES (CONTINUED)

Page(s)

5B Wright & Miller, *Fed. Prac. & Proc. Civ.* § 1357 (4th ed.
    July 2024 update)...................................................................... 20

## INTRODUCTION

Plaintiff Bernard Waithaka, a self-described businessman, performs services with companies like Uber, Lyft, and Amazon. With Amazon, he occasionally delivers packages using Amazon Flex, a program that allows individuals ("Delivery Partners" or "DPs") to earn money delivering packages to customers. Waithaka filed suit alleging that he is an employee of Amazon, and that the company purportedly violated Massachusetts law by (1) not reimbursing him for expenses ("Wage Act claim"), and (2) not paying him the minimum wage for certain (unspecified) delivery blocks ("minimum-wage claim"). He sought to represent a class of all DPs who delivered packages in Massachusetts over the past ten years.

The district court correctly denied Waithaka's motion for class certification. It held that Waithaka had failed to establish either commonality or predominance on the minimum-wage claim. It further held that Waithaka's Wage Act claim was not legally viable, and even if it were, individual issues would predominate and preclude class certification.

Waithaka fails to establish any basis for interlocutory review. Waithaka fails to identify *any* error in the district court's denial of certification on the minimum-wage claim, let alone manifest error. The district court correctly found that Waithaka failed to provide any sound method for resolving his minimum-wage claim on a class-wide basis. In particular, Waithaka failed to suggest a viable way to determine each DP's working hours and thus their effective hourly pay.

Waithaka likewise fails to identify any error in the district court's denial of certification on the Wage Act claim. The district court rightly concluded that class certification was not warranted even assuming the Wage Act claim was legally viable because Waithaka failed to establish predominance. Thus, this Court need not even consider Waithaka's Wage Act arguments in rejecting his petition. If the Court were to consider them, however, they would fail because (i) Waithaka is effectively making an improper request for certification to the Massachusetts Supreme Judicial Court (SJC) that he did not timely make below, and (ii) the district court's interpretation of the Wage Act is correct.

Waithaka finally argues that review is warranted because the ruling sounds the death-knell for his litigation. But Waithaka may still pursue his individual claims, and any "death-knell" situation requires that the class certification ruling be questionable, which it is not.

Waithaka's 23(f) petition should be denied.

## FACTUAL BACKGROUND

### A. The Amazon Flex Program

Amazon Flex is a local delivery program used to supplement delivery services provided by entities like USPS. Dkt.178 at 3-7. Individuals who wish to participate must agree to the Independent Contractor Terms of Service ("TOS") and download the Amazon Flex app. *Id.* The app lists available delivery blocks; each listing provides an estimated duration and the offered "Service Fee," which includes both pay and expense reim-

bursements. *Id.* If a DP accepts a block, he drives to the designated location to pick up the items to be delivered. *Id.* He then navigates to each address and delivers the corresponding items. *Id.*

A delivery block is different from a "delivery window," the maximum time for completion of a block. *Id.* at 4. The delivery window varies by product: perishable groceries may have a two-hour window, while non-perishable goods generally may be delivered at any time before 9:00 p.m. *Id.* The delivery window for non-perishables picked up at 9:00 a.m., for example, would usually be 12 hours (i.e., from 9:00 a.m. until 9:00 p.m.), even though the estimated duration of the block could be 2 to 4 hours.

The TOS's have changed over the years, but each version provides:

- DPs "decide the means and manner in which to provide the Services and achieve the results that [they] have agreed to provide."
- DPs "are free to map out [their] own routes, sequence [their] deliveries and in every other way control the means and manner in which [they] deliver Deliverables."
- "Service Fees" are meant to include both pay and expense reimbursements: they "include all amounts due to you for providing your Vehicle and the Services under this Agreement, including any expenses you may incur."

Dkt.178 at 4.

Different delivery blocks have different Service Fees, delivery windows, delivery locations, numbers of stops, and other features. *Id.* Certain delivery blocks, for example, allow DPs to earn tips. *Id.* Others offer higher Service Fees due to "surge pricing." *Id.* at 5. Some blocks may be

canceled up to 45 minutes before the scheduled start time, while others are "instant offers" that must be delivered right away. *Id.* at 4-5.

DPs operate their businesses in different ways. Many DPs, like Waithaka, drive or deliver with other companies (sometimes during a Flex block) using other apps. *Id.* at 5. Some are employed full-time by other companies. *Id.* DPs choose when they work; how long they work; which blocks to accept; and whether to take breaks during blocks. *Id.* And DPs can decide not to use the app whenever they like. *Id.* at 5-6.

### B. Plaintiff Bernard Waithaka

Waithaka downloaded the Amazon Flex app in 2017. Dkt.172-1 ¶¶ 3, 5. He initially spent about 15-20 hours a week using the app and now uses it "more occasionally." *Id.* ¶ 5. He acknowledged that he often completes three-hour delivery blocks in two hours, Dkt.179-1 at 23-24; that he has a family cell-phone plan with unlimited data, *id.* at 24-26; and that he generally picks up a ride-sharing passenger on his way home, *id.* at 12, 25. Waithaka's data also show long periods of inactivity during delivery blocks ("gap time"), including one of 9.6 hours. Dkt.178-10 at 45.

### C. Waithaka's lawsuit and certification motion

Waithaka filed suit in Massachusetts state court. Dkt.1. The suit was removed and then transferred. Dkt.59. Waithaka's barebones complaint alleges that Amazon "misclassified [DPs] as independent contractors instead of employees"; violated the Wage Act by requiring DPs to "bear business expenses necessary to perform their work, such as gas and

car maintenance and supplying their own smartphones and phone data plans"; and violated the Minimum Wage Law "by failing to ensure that [DPs] are paid at least the full state minimum wage." Dkt.1-1 at 4-5.

In his motion for class certification, Waithaka argued that certification was appropriate because the question of DP classification (i.e., independent contractor or employee) could purportedly be decided in one stroke. Dkt.172 at 1. Waithaka did not present any expert evidence or any evidence from any DP besides himself.

### D. Amazon's opposition and expert report

In opposing Waithaka's certification motion, Amazon submitted an expert report from Robert Crandall. Dkt.178-10. Analyzing Waithaka's data and that of a random sample of 1,000 DPs, Crandall concluded:

- The data shows periods of inactivity or gap time indicating that DPs often take breaks or perform other tasks between deliveries. Report at 7, 41-46.

- Data from Uber, Lyft, Instacart, and other apps is necessary to determine when DPs were "multi-apping" (i.e., using more than one gig economy app at the same time) between delivering packages for Amazon, as Waithaka admitted to doing. *Id.* at 48-51.

- Waithaka's proposed method for calculating vehicle expenses fails because (i) "planned miles" are not an accurate proxy for actual miles; (ii) there is no planned mileage for 67.2% of blocks in the sample data; and (iii) the IRS mileage rate is not a reliable measure of actual vehicle expenses. *Id.* at 5-6, 9-11, 21-36, 52.

- Waithaka did not provide a methodology for determining what portion of his cell-phone expenses were attributable to Amazon Flex, much less a class methodology. *Id.* at 6-7, 39-40, 52.

Amazon also submitted declarations from multiple DPs attesting to their

varying delivery practices; use of other gig economy apps; and hourly rates well above applicable minimums. Dkt.178-3 to Dkt.178-9.

### E.    The district court's request for supplemental briefing

After the class-certification briefing, the district court directed the parties to submit supplemental briefs on whether the Wage Act requires reimbursement of employee business expenses. Dkt.182. Waithaka filed an opening and reply brief on this question. Dkt.183, 185.

### F.    The district court's denial of class certification

In denying class certification, the district court first examined the dubious legal theory behind Waithaka's Wage Act claim—i.e., the notion that the Wage Act requires employers to reimburse employees for all business expenses in every instance. Dkt. 186 at 7-11. The court correctly rejected that theory as a matter of law, leaving only the minimum-wage claim as a potential basis for liability and class certification. *Id.* at 11. The court went on to conclude, however, that certification would not be warranted *even if* Waithaka had a viable Wage Act claim. *Id.* at 18.

Turning to the requirements for class certification, and starting with commonality, the district court explained that it is not enough to raise a common *question*. *Id.* at 12-13. "What matters to class certification is not the raising of common questions—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (cleaned up). The district court correctly found that

-6-

a class-wide proceeding would not generate a common answer on the minimum-wage claim. Dkt.186 at 13-14. Although Waithaka argued that the claim could be resolved on a class-wide basis by dividing the pay each DP received by the time between pick-up and last delivery, the district court rightly rejected that method as fundamentally flawed. *Id.* at 14. The time between pick-up and last delivery, the district court observed, fails to account for "gap time" in which the DP is not performing any work on behalf of Amazon—i.e., time spent on personal errands or for other companies. *Id.* The district court thus correctly concluded that "individual methods would be necessary to assess" each DP's actual working time and whether each DP received at least minimum wage for that work. *Id.* at 15.

The district court next concluded that Waithaka had failed to establish predominance with respect to either the Wage Act claim or the minimum-wage claim. *Id.* at 17-19. Even if Waithaka had a viable Wage Act claim for phone and vehicle expenses, the court explained, individual issues would predominate in resolving that claim. *Id.* at 18. "For one, the amount each class member used their phone or vehicle at work will vary because of the drivers' flexibility to do what they want and go where they please during gap times." *Id.* "For another, the variety of possible makes, models, and vintages across both phones and vehicles" is expansive. *Id.* Amazon "[has] the right to contest liability as to each class member," the district court observed, "which would lead to potentially thousands of minitrials on liability and damages." *Id.* So too with the minimum-wage

claim: "Each of the thousands of class members could have worked for other companies between the time they first picked up packages and last delivered them," which "poses thousands of different questions, each one of which would diminish some or all of [Amazon's] liability." *Id.* at 18-19. The district court thus concluded that "the individual issues predominate over the common questions." *Id.* at 19 (quoting *Bowerman v. Field Asset Servs., Inc.*, 60 F.4th 459, 471 (9th Cir. 2023)).

The district court therefore denied Waithaka's motion for class certification and dismissed his Wage Act claim without prejudice. *Id.* at 20.

## STANDARD OF REVIEW

In this Court, petitions for interlocutory review under Rule 23(f) are granted only "sparingly." *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 959 (9th Cir. 2005). "Interlocutory appeals are generally disfavored because they are disruptive, time-consuming, and expensive." *Id.* (cleaned up). They "add to the heavy workload of the appellate courts, require consideration of issues that may become moot, and undermine the district court's ability to manage the class action." *Id.* Accordingly, discretionary review under Rule 23(f) is denied except in "rare" cases when "(1) there is a death-knell situation for either the plaintiff or defendant that is independent of the merits of the underlying claims, coupled with a class certification decision by the district court that is questionable; (2) the certification decision presents an unsettled and fundamental issue of law

-8-

relating to class actions, important both to the specific litigation and generally, that is likely to evade end-of-the-case review; or (3) the district court's class certification decision is manifestly erroneous." *Id.*

## REASONS THE PETITION SHOULD BE DENIED

The district court correctly denied class certification and there is no basis for Rule 23(f) review.

## I. No manifest error in denying certification on minimum wage-claim.

### A. Waithaka failed to satisfy the requirements for certification.

The district court correctly denied certification on the minimum-wage claim because Waithaka failed to satisfy the requirements of commonality and predominance for two main reasons.

*First*, Waithaka offered no common evidence that could prove how much time DPs actually spent delivering Amazon packages. Amazon's records show the time the DP arrives at the pick-up location and the package delivery times. Though Waithaka asked the district court to assume that every DP was delivering Amazon packages during the entire time between arrival at the pick-up location and the last delivery of the day, that assumption is belied by Waithaka's own testimony, the sworn statements of other DPs, and uncontroverted expert analysis of the available data. Waithaka and other DPs admitted that they can and do take long breaks, run personal errands, and/or pick up Uber/Lyft riders while Amazon packages are in their trunks. Dkt.178 at 24-25. These time gaps

are evident in the Crandall Report. Dkt.178-10 at 44-46. Waithaka's own data, for example, reveal long periods of inactivity in the middle of blocks—up to 9.6 hours in one day alone. *Id.* at 45. And his data confirm that he picked up rideshare riders in the middle of Amazon Flex deliveries. *Id.* at 49-51. Accordingly, only individualized evidence could answer how much time any given DP performed services through Amazon Flex on any given day and thus his effective hourly rates.

*Second*, the minimum-wage claim is premised on the theory that the compensation of an unspecified number of DPs might have fallen below applicable minimums *after accounting for expenses. See* Dkt.172-1 at 3. But as explained further below, Waithaka offered no method for determining those expenses on a class-wide basis.[1]

In sum, individualized evidence would be needed to determine when each delivery block was completed; the Service Fee for each block; the actual working time spent completing the block; and the expenses incurred for that block to assess whether each DP was paid the applicable minimum wage. A class-wide proceeding would not generate a common answer on Amazon's liability, and individual questions would certainly predominate in any such proceeding. *See Bowerman*, 60 F.4th at 468-71.

---

[1] Waithaka's claim that each DP's expenses must be subtracted from the Service Fee to determine his effective hourly rate is at odds with his claim that DPs must also be reimbursed directly for expenses. Waithaka cannot double dip in that way. *Either* expenses are subtracted in determining minimum-wage compliance *or* they are separately owed—it can't be both.

-10-

**B.     Waithaka's counterarguments are meritless.**

Waithaka's three counterarguments are meritless. He first contends that the individualized issues the district court identified are relevant only to damages, not liability, and as such do not preclude certification. Pet.15. Not so.

Individualized questions preclude a common assessment of damages, to be sure, but they *also* preclude a class-wide determination of liability. Amazon cannot be held liable *at all* if its Service Fees were sufficient to compensate DPs at or above the minimum wage. And the evidence shows that the Service Fees were more than adequate to clear that bar. DPs have attested that their effective hourly rates often far exceed any applicable minimum ($8/hour to $15/hour).[2] *See* Dkt.178-3 ¶ 10 (earns "from $60 to $90" for "every two-hour block I complete"); Dkt.178-5 ¶ 5 (picks blocks that will make $30 an hour); Dkt.178-6 ¶ 11 (has "earned $96 for a designated 3-hour block" despite completing "deliveries in about 1 hour"). Indeed, *Waithaka has not introduced any evidence showing that any DP was ever paid less than minimum wage*, even using Waithaka's preferred assumptions about expenses, hours worked, etc.

This Court has repeatedly found certification inappropriate in wage-and-hour cases when, as here, liability cannot be established on a

---

[2] The Massachusetts minimum wage has changed seven times over the ten-year class period (from $8/hour to $15/hour). *See* Mass. Gen. Laws ch. 151, § 1; 2014 Mass. Legis. Serv. ch. 144 (S.B. 2195); 2018 Mass. Legis. Serv. ch. 121 (H.B. 4640).

class-wide basis. In *Castillo v. Bank of America, NA*, 980 F.3d 723 (9th Cir. 2020), for example, the plaintiff challenged Bank of America's formulas for calculating overtime. This Court held that individual issues precluded class certification where many class members were "not underpaid and thus were not injured." *Id.* at 731. The question whether class members were ever underpaid, the Court explained, "goes to *liability* rather than damages." *Id.* (cleaned up). Likewise in *Bowerman*, plaintiffs alleged they were misclassified as independent contractors and were owed additional wages and expense reimbursements. 60 F.4th at 464. This Court held that plaintiffs could not proceed as a class because "individualized inquiries would be needed to establish that class members worked overtime [and] that claimed expenses were reimbursable"—inquiries necessary to establish both "liability and damages." *Id.* at 468-69.

Waithaka next argues that he should be allowed to "use representative samples" to establish the hours DPs worked. Pet.16. But Waithaka *forfeited that argument by failing to present it below. E.g., DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1233 n.1 (9th Cir. 2024) (argument not presented to district court is waived). He never even *suggested* the use of representative samples, much less proposed a method for how that would work.[3] Waithaka's omission is particularly glaring given his bur-

---

[3] Representative evidence "could not lead to a fair or accurate estimate" of working hours because DPs did not spend "roughly equal time" on non-Flex activities during delivery blocks, as shown by the Crandall report (Dkt.178-10). *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 459 (2016).

den to "actually *prove*—not simply plead," each requirement of Rule 23, and the court's corresponding obligation to "make a rigorous assessment of the available evidence and the method or methods by which plaintiffs propose to use the class-wide evidence to prove the common question in one stroke." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664, 666 (9th Cir. 2022) (cleaned up). Waithaka did not come close to satisfying his burden.

Finally, Waithaka points to a TOS term saying DPs' vehicles are under exclusive lease to Amazon when DPs are "actively performing the Services" as supporting his argument that the entirety of block time is compensable. Pet.16.[4] Waithaka failed to raise this argument below and it is forfeited. It is also wrong: the TOS defines "actively performing the services" as time spent on deliveries and returns rather than the entire block, Dkt.178-1 at 41-42, and the federal motor carrier regulation referenced in the term expressly does not affect whether drivers are independent contractors. *See* 49 C.F.R. § 376.12(c)(4) ("Nothing in the provisions required by paragraph (c)(1) of this section is intended to affect whether the lessor or driver provided by the lessor is an independent contractor

---

[4] A federal regulation requires licensed motor carriers, like Amazon, to enter into lease agreements with the owners of vehicles operated by or for the carriers. 49 C.F.R. §§ 376.11, 376.12. The regulation's purpose is "to protect owner-operators," that is, drivers, *Owner Operator Indep. Drivers Ass'n, Inc. v. Swift Transp. Co.*, 367 F.3d 1108, 1115 (9th Cir. 2004), by allocating to carriers financial responsibility for torts committed by drivers, *Vargas v. FMI, Inc.*, 233 Cal. App. 4th 638, 657 (2015).

or an employee of the authorized carrier lessee."). DPs—including Waithaka by his own admission—routinely spend time during blocks on non-Flex activities (other gig work, personal errands, etc.) and are not "actively performing the services" or working during the entirety of their block for purposes of compensability. *E.g.*, Dkt.178 at 24-25. There is thus no evidentiary support for the inference that all delivery-block time is working time. *E.g.*, *Perry v. Brown*, 667 F.3d 1078, 1085 (9th Cir. 2012) (inferences must be drawn from facts in record).

Waithaka has identified no error in the district court's denial of certification on the minimum-wage claim. There is no basis for 23(f) review.

## II. No manifest error in denying certification of Wage Act claim.

As an initial matter, Waithaka has not shown that the order dismissing the Wage Act claim is an "order granting or denying class-action certification," Fed. R. Civ. P. 23(f), so it is questionable whether a merits panel could even reach that distinct issue. *See Boshears v. PeopleConnect, Inc.*, 76 F.4th 858, 861 (9th Cir. 2023). But more fundamentally, the petition should be denied because of the individualized issues barring class certification.

### A. Even assuming a viable Wage Act claim, Waithaka failed to meet the requirements for class certification.

The district court correctly denied certification of the Wage Act claim because Waithaka failed to show liability could be established on a class-wide basis without individual issues predominating.

-14-

There is no dispute that Amazon's Services Fees are intended to cover expenses. Dkt.178 at 4. So if Massachusetts law required expense reimbursements, the relevant question would be whether the Service Fees were sufficient to cover expenses and labor. Answering that question would require individualized inquiries into the Service Fees each DP received for each block; the expenses he/she reasonably and necessarily incurred for that block; and whether the fees covered expenses with enough remaining to compensate the DPs at or above the applicable minimum wage. Waithaka failed to offer any mechanism for resolving those inquiries on a class-wide basis.

To start, Waithaka offered no common evidence with which to prove fuel costs. The first determinant of fuel costs—mileage—is not subject to class-wide proof. While Amazon has pre-planned mileage data for some blocks, Waithaka offered no evidence suggesting that all (or even most) DPs drove that pre-planned distance. The evidence shows that many DPs planned their own itineraries. Dkt.178 at 20-21. Proving mileage would require collecting records from thousands of class members; evaluating the records that exist; and testing each DP's memory regarding the routes they took, and whether they engaged in personal activities or drove with Uber, Lyft, or some other company during their blocks.

The second determinant of fuel costs—price of vehicle operation per mile—also requires individualized inquiries into the make, model, and year of each car. *See* Dkt.186 at 18. Some DPs, like Waithaka, drove mul-

tiple vehicles; fuel costs for his 2010 Prius, for example, are dramatically lower than for his 2010 Mazda CX-9. Dkt.178-10 at 33. Waithaka suggested using the IRS rate as a proxy, but as Crandall explained, that rate is not a reliable measure of actual vehicle costs. *Supra* at 5. *See Parker v. Battle Creek Pizza, Inc.*, 95 F.4th 1009, 1015 (6th Cir. 2024) (noting "good reasons not to expand the [IRS] reasonable-approximation rule to minimum-wage computations"). Waithaka offered no expert testimony or legal authority that supports using a rough average rate set for tax purposes to establish liability for actual expenses in a wage-and-hour case.

Relatedly, the few states that (unlike Massachusetts) require expense reimbursements require them only for "reasonable" and "necessary" expenses.[5] Those requirements, in turn, would require individualized inquiries into whether the expenses associated with fuel-inefficient cars (or premium gas or expensive new phones with family plans, etc.) were "reasonable" or "necessary." *See Dukes*, 564 U.S. at 367.

Further, expenses not attributable to Amazon Flex are not Amazon's responsibility, yet Waithaka never explained how it would be possible to apportion transportation, phone, and insurance expenses between Amazon, other apps, and personal use. *See* Dkt.178-10 at 22.

And even if it were possible to prove expenses on a class-wide basis, Waithaka would have to show that the Service Fees each DP received

---

[5] *See, e.g.*, Cal. Lab. Code § 2802; 820 Ill. Comp. Stat. 115/9.5; Okla. Stat. tit. 40, § 197.17; S.D. Codified Laws § 60-2-1; Code Ark. R. 003.20.2-3.

were insufficient to cover those expenses. Waithaka never even suggested a *method* for doing so, much less provided *evidence* that would show the Service Fees were insufficient with respect to the class as a whole.

Even if Waithaka had a viable Wage Act claim, therefore, he failed to meet the requirements for class certification with respect to that claim.

**B.   Waithaka's attempt to use 23(f) review to belatedly request SJC certification is improper.**

Claiming that "[t]his case presents the perfect opportunity for the SJC" to address the Wage Act question, Waithaka asks this Court to "grant review and certify [the question] to the SJC." Pet.14. Waithaka's request is improper because he failed to act on this "perfect opportunity" in any of his four briefs in the district court on this *very question*. Indeed, he chose not to request SJC certification even after Amazon suggested, in the alternative, that the district court could use that option if it had any doubt about the Wage Act's meaning. He instead waited until *after* he lost in the district court to request certification. Dkt.187.

This Court "look[s] with disfavor upon motions to certify that are filed after the moving party has failed to avail itself of a prior opportunity to seek certification." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1108-09 (9th Cir. 2013). "There is a presumption against certifying a question to a state supreme court after the federal district court has issued a decision" because a "party should not be allowed 'a second chance at victory' through certification by the appeals court after an adverse district court

ruling." *Thompson v. Paul*, 547 F.3d 1055, 1065 (9th Cir. 2008). Otherwise, "the initial federal court decision will be nothing but a gamble." *Id.* Parties should not be allowed "to exploit certification as a de facto reconsideration or appeal." *Van v. LLR, Inc.*, 562 F. Supp. 3d 1, 4 (D. Alaska 2021) (cleaned up). Having gambled on the prospect that the district court would agree with his interpretation of the Wage Act, Waithaka should not be allowed a second chance at victory after losing that bet.[6]

## C. The district court correctly interpreted the Wage Act.

Moreover, the district court correctly concluded that Waithaka has no viable Wage Act claim. The text of the Wage Act does not mention expenses or reimbursements. It merely requires employers to pay each employee "the wages earned by him." Mass. Gen. Laws ch. 149, § 148. In construing the Wage Act, the SJC has declined to "add language" that "the Legislature itself" did not include. *Tze-Kit Mui v. Mass. Port Auth.*, 478 Mass. 710, 712-13 (2018) (declining to interpret "wages" to include sick pay); *see Prozinski v. Ne. Real Est. Servs., LLC*, 59 Mass. App. Ct. 599, 603 (2003) (declining to interpret "wages" to include severance pay).

The "'purpose' of the Wage Act is 'to prevent the unreasonable detention of wages.'" *Grogan v. All My Sons Bus. Dev. LLC*, 552 F. Supp. 3d 142, 145-46 (D. Mass. 2021). It requires prompt payment of wages due, nothing more. There is "nothing in the statute's plain language that re-

---

[6] While Waithaka notes (at 14) that a district court previously certified a similar question to the SJC, the question was not identical and there was no issue of waiver.

quires employers to compensate their employees in a particular manner, or precludes them from agreeing to any time or work measurement that they deem to be appropriate." *Id.* at 146. "Thus, as long as the employer pays each of its employees all 'wages earned' in a timely manner, and does not violate any other wage law such as the minimum wage statute … , parties to an employment relationship are free to use whatever compensation structure they see fit." *Id.*; *see also Salerno v. Baystate Ford, Inc.*, 2016 WL 513747, at *2-3 & n.3 (Mass. Super. Feb. 5, 2016) (same).

Courts have held certain kinds of *wage deductions* to be improper, but those holdings plainly do not apply here. Employers may not deduct wages to cover costs statutorily imposed on employers, such as workers' compensation insurance, *Awuah v. Coverall N. Am., Inc.*, 460 Mass. 484, 494 (2011);[7] and they cannot enter "special contracts" to deduct costs such as damage the employee may cause to company trucks or third-party property, *Camara v. Att'y Gen.*, 458 Mass. 756, 760-62 (2011). Where an employer does not deduct its own costs from earned wages or otherwise withhold agreed-upon wages, the Wage Act does not apply.[8]

---

[7] *See also Awuah v. Coverall N. Am., Inc.*, 740 F. Supp. 2d 240, 243 (D. Mass. 2010) (Wage Act does *not* require reimbursements for supplies and equipment); *Awuah v. Coverall N. Am., Inc.*, 2012 WL 910260, at *1 (D. Mass. Mar. 15, 2012) (interpreting *Awuah*, 460 Mass. 484, as allowing compensation scheme in which employee paid for equipment).

[8] Waithaka does not argue that it was error for the district court to act *sua sponte* in dismissing the Wage Act claim, and for good reason: "[T]he district judge on his or her own initiative may note the inadequacy of the

### III. Waithaka's death-knell argument is meritless.

Waithaka argues that the order sounds the death-knell for this federal-court litigation because his minimum-wage claim falls below the jurisdictional threshold under the Class Action Fairness Act, 28 U.S.C. § 1332(d). Pet.17-18. That is wrong. "If a defendant properly removed a putative class action at the get-go, a district court's subsequent denial of Rule 23 class certification does not divest the court of jurisdiction, and it should not remand the case to state court." *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1092 (9th Cir. 2010).

In any event, for 23(f) review, this Court requires a death-knell situation "*coupled with a class certification decision by the district court that is questionable.*" *Chamberlan*, 402 F.3d at 959 (emphasis added). As explained above, the district court's class-certification decision is not questionable. It is not even a close call.

## CONCLUSION

This Court should deny Waithaka's 23(f) petition.

---

complaint and dismiss it for failure to state a claim as long as the procedure employed is fair to the parties." 5B Wright & Miller, *Fed. Prac. & Proc. Civ.* § 1357 (4th ed. July 2024 update). The procedure employed—dismissal only after supplemental briefing—was more than fair. *See, e.g.*, *Seismic Reservoir 2020, Inc. v. Paulsson*, 785 F.3d 330, 335 (9th Cir. 2015).

Dated: January 24, 2025

Respectfully submitted,

_s/ Jason C. Schwartz_
Jason C. Schwartz
Lucas C. Townsend
Gibson, Dunn & Crutcher LLP
1700 M. Street, N.W.
Washington, DC 20036-4504
Tel: (202) 955.8500

Dhananjay S. Manthripragada
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel: (213) 229.7000

Megan Cooney
Gibson, Dunn & Crutcher LLP
3161 Michelson Drive, Ste. 1200
Irvine, CA 92612-4412
Tel: (949) 451.3800

*Counsel for Defendants-Respondents*
*Amazon.com, Inc. and Amazon Logistics, Inc.*

## Certificate of Related Cases

Counsel is unaware of any related cases within the meaning of Ninth Circuit Rule 28-2.6.

<u>  s/ Jason C. Schwartz  </u>

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitations of Fed. R. App. P. 5(c) and 9th Cir. R. 5-2(b) because it does not exceed 20 pages, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). I further certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type styles requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

January 24, 2025

_s/ Jason C. Schwartz_

## STATUTORY ADDENDUM

**Mass. Gen. Laws ch. 149, § 148:**

Every person having employees in his service shall pay weekly or bi-weekly each such employee the wages earned by him to within six days of the termination of the pay period during which the wages were earned if employed for five or six days in a calendar week, or to within seven days of the termination of the pay period during which the wages were earned if such employee is employed seven days in a calendar week, or in the case of an employee who has worked for a period of less than five days, hereinafter called a casual employee, shall, within seven days after the termination of such period, pay the wages earned by such casual employee during such period, but any employee leaving his employment shall be paid in full on the following regular pay day, and, in the absence of a regular pay day, on the following Saturday; and any employee discharged from such employment shall be paid in full on the day of his discharge, or in Boston as soon as the laws requiring pay rolls, bills and accounts to be certified shall have been complied with; and the commonwealth, its departments, officers, boards and commissions shall so pay every mechanic, workman and laborer employed by it or them, and every person employed in any other capacity by it or them in any penal or charitable institution, and every county and city shall so pay every employee engaged in its business the wages or salary earned by him, unless such mechanic, workman, laborer or employee requests in writing to be paid in a different manner; and every town shall so pay each employee engaged in its business if so required by him; but an employee absent from his regular place of labor at a time fixed for payment shall be paid thereafter on demand; provided, however, that the department of telecommunications and energy, after hearing, may authorize a railroad corporation or a parlor or sleeping car corporation to pay the wages of any of its employees less frequently than weekly, if such employees prefer less frequent payments, and if their interests and the interests of the public will not suffer thereby; and provided, further, that employees engaged in a bona fide executive, administrative or professional capacity as determined by the attorney general and employees whose salaries are regularly paid on a weekly basis or at a weekly rate for a work week of sub-

-24-

stantially the same number of hours from week to week may be paid bi-weekly or semi-monthly unless such employee elects at his own option to be paid monthly; and provided, further, that employees engaged in agricultural work may be paid their wages monthly; in either case, however, failure by a railroad corporation or a parlor or sleeping car corporation to pay its employees their wages as authorized by the said department, or by an employer of employees engaged in agricultural work to pay monthly the wages of his or her employees, shall be deemed a violation of this section; and provided, further, that an employer may make payment of wages prior to the time that they are required to be paid under the provisions of this section, and such wages together with any wages already earned and due under this section, if any, may be paid weekly, bi-weekly, or semi-monthly to a salaried employee, but in no event shall wages remain unpaid by an employer for more than six days from the termination of the pay period in which such wages were earned by the employee. For the purposes of this section the words salaried employee shall mean any employee whose remuneration is on a weekly, bi-weekly, semi-monthly, monthly or annual basis, even though deductions or increases may be made in a particular pay period. The word "wages" shall include any holiday or vacation payments due an employee under an oral or written agreement. An employer, when paying an employee his wage, shall furnish to such employee a suitable pay slip, check stub or envelope showing the name of the employer, the name of the employee, the day, month, year, number of hours worked, and hourly rate, and the amounts of deductions or increases made for the pay period.

Compensation paid to public and non-public school teachers shall be deemed to be fully earned at the end of the school year, and proportionately earned during the school year; provided, however, that payment of such compensation may be deferred to the extent that equal payments may be established for a 12 month period including amounts payable in July and August subsequent to the end of the school year.

Every railroad corporation shall furnish each employee with a statement accompanying each payment of wages listing current accrued total earnings and taxes and shall also furnish said employee with each such payment a listing of his daily wages and the method used to compute such wages.

This section shall apply, so far as apt, to the payment of commissions when the amount of such commissions, less allowable or authorized deductions, has been definitely determined and has become due and payable to such employee, and commissions so determined and due such employees shall be subject to the provisions of section one hundred and fifty.

This section shall not apply to an employee of a hospital which is supported in part by contributions from the commonwealth or from any city or town, nor to an employee of an incorporated hospital which provides treatment to patients free of charge, or which is conducted as a public charity, unless such employee requests such hospital to pay him weekly. This section shall not apply to an employee of a co-operative association if he is a shareholder therein, unless he requests such association to pay him weekly, nor to casual employees as hereinbefore defined employed by the commonwealth or by any county, city or town.

No person shall by a special contract with an employee or by any other means exempt himself from this section or from section one hundred and fifty. The president and treasurer of a corporation and any officers or agents having the management of such corporation shall be deemed to be the employers of the employees of the corporation within the meaning of this section. Every public officer whose duty it is to pay money, approve, audit or verify pay rolls, or perform any other official act relative to payment of any public employees, shall be deemed to be an employer of such employees, and shall be responsible under this section for any failure to perform his official duty relative to the payment of their wages or salaries, unless he is prevented from performing the same through no fault on his part.

Any employer paying wages to an employee by check or draft shall provide for such employee such facilities for the cashing of such check or draft at a bank or elsewhere, without charge by deduction from the face amount thereof or otherwise, as shall be deemed by the attorney general to be reasonable. The state treasurer may in his discretion in writing exempt himself and any other public officer from the provisions of this paragraph.

An employer paying his employees on a weekly basis on July first, nineteen hundred and ninety-two shall, prior to paying said employees on a bi-weekly basis, provide each employee with written notice of such change at least ninety days in advance of the first such bi-weekly paycheck.

Whoever violates this section shall be punished or shall be subject to a civil citation or order as provided in section 27C.

**Mass. Gen. Laws ch. 151, § 1:**

It is hereby declared to be against public policy for any employer to employ any person in an occupation in this commonwealth at an oppressive and unreasonable wage as defined in section two, and any contract, agreement or understanding for or in relation to such employment shall be null and void. A wage of less than $15.00 per hour, in any occupation, as defined in this chapter, shall conclusively be presumed to be oppressive and unreasonable, wherever the term "minimum wage" is used in this chapter, unless the commissioner has expressly approved or shall expressly approve the establishment and payment of a lesser wage under the provisions of sections seven and nine. Notwithstanding the provisions of this section, in no case shall the minimum wage rate be less than $.50 higher than the effective federal minimum rate.

**Mass. Gen. Laws ch. 151, § 7:**

The commissioner may, and upon the petition of fifty or more citizens of the commonwealth shall, undertake such investigation as may be required to ascertain whether any substantial number of persons in any occupation are receiving oppressive and unreasonable wages, as defined in section one. The commissioner may, subsequent to such investigation, differentiate and classify employments in any occupation according to the nature of the service rendered and recommend appropriate minimum fair wage rates for different classes of employment. The commissioner may establish minimum fair wage rates varying with localities if in its judgment conditions make such local differentiation proper and will not cause

unreasonable discrimination against any locality. The commissioner may establish a suitable scale of rates for learners and apprentices in any occupation or occupations, which scale of learners' and apprentices' rates may be less than the regular minimum fair wage rates established for experienced persons in such occupation or occupations, provided that in a retail, merchandising or laundry establishment such scale of learners' and apprentices, rates shall apply only to the first eighty hours during which such learner or apprentice is employed.

The commissioner shall not establish minimum fair wage rates below $1.85 per hour, except for learners, apprentices and ushers, ticket sellers and ticket takers whose minimum fair wage rates shall not be below $1.25, and except for janitors and caretakers of residential property, who, when furnished with living quarters, shall be paid a wage of not less than $36 per week, and except for services as golf caddies, and except for service people who customarily and regularly receive more than $20 a month in tips.

In determining the wage an employer is required to pay a tipped employee, the amount paid to such employee by the employer shall be an amount equal to: (1) the cash wage paid such employee which for purposes of such determination shall be not less than $6.75; and (2) an additional amount on account of the  tips received by such employee which amount is equal to the difference between the wage specified in clause (1) and the wage in effect under section 1; provided, however, that an employer shall calculate the amount required by clause (2) at the completion of each shift worked by the employee, with payments to the employee to be consistent with section 148 of chapter of 149. The additional amount on account of tips may not exceed the value of the tips actually received by an employee. This paragraph shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this paragraph, and all tips received by such employee have been retained by the employee, except that this paragraph shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.

The commissioner may establish overtime rates for all hours worked in excess of forty hours in any week.

**CERTIFICATE OF SERVICE**

I certify that on January 24, 2025, I electronically filed the foregoing with the Clerk of the Court for the U.S. Court of Appeals for the Ninth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct.

DATED this 24th day of January 2025.

*s/ Jason C. Schwartz*